## HATHORN *et al. vs.* MAYNARD.

1. The vendee of property, the absolute title to which was apparently in the vendor, to protect it from a trust sought to be set up, is only bound to show that he had no notice of the trust funds having gone into the property, although he might have had some knowledge of the mingling by his vendor of the trust funds with his own. The *onus* of pointing out and identifying the trust property was not on him, if he could show that he was an innocent purchaser.

2. Where a deed by its terms conveys in trust only four-sevenths of the land to one party, and three-sevenths to another not in trust, but unconditionally, to instruct the jury that they might find that it all was trust property notwithstanding the recitals in the deed, would be error.

3. Where the court was requested to charge that " even if the vendor gave the vendee assurances that no trust money had gone into the property, the vendee acted on this assurance at his peril, and if it turned out to be untrue he is not protected," it was not error to add, " unless in your judgment he acted upon such information as became a prudent man in making inquiry after truth."

4. To the request that " a *cestui que trust* is not bound by statements made by a trustee to enable him to violate his trust," it was proper to add, " if you are satisfied in this case such statements were made with such a purpose."

5. In view of the facts it was not error to charge that " if husband and wife took a deed jointly to certain property, he three-sevenths

and she four-sevenths, they were tenants in common; and if the husband, in paying for his interest in property afterwards purchased, used a portion of his wife's profits derived from the sale of the place, this, without more, did not destroy their joint interest in the property bought with the proceeds of such a sale, but it made the husband the debtor of the wife to the extent of her money so used, which could be settled between them at any time," the important fact being whether he had or had not so settled the liability.

6. A request to charge, which required a full settlement on the part of the trustee with the *cestui que trust* before property which had been mixed with the trust estate could be conveyed at all, one of the questions made being whether a part or all of the trust estate had been fully accounted for so as to leave the property in dispute wholly or partially free from the trust, and which further required the purchaser to prove that the other property, with which he had no concern, was sufficient to settle with the *cestui que trust*, was properly refused. To have made it applicable at all, it needed a qualification to the effect that the purchaser must have known at the time that the funds had been mixed.

7. There was no error in charging that if complainants had been fully paid by the conveyance to them of property equal to the value of the original amount received, they could not recover.

8. There was no error in charging that if the trustee mingled his own with the trust funds, yet he had the right to settle with his *cestui que trusts* by conveying to them an amount of property equal in value to the *corpus* of their estate and the profits thereon, and that if they are now in the possession of such property, claiming and enjoying the same, it is evidence of their acceptance of such settlement. In view of the testimony, the court should have added that at the time of the conveyance and settlement some change was necessary to indicate the transfer and acceptance besides the mere paper title.

9. A deed is the best evidence of the intention of the grantor in making it, and must be produced, if accessible; parol evidence on the subject should be excluded.

10. The verdict is contrary neither to equity, justice, nor the charge of the court. It is supported both by the law and the evidence.

11. Where the bill of exceptions was filed in the clerk's office in time for it and the record to be forwarded to the clerk's office of the supreme court before the return day for the next term, but it was not sent up until such term had commenced, the clerk in his certificate giving as the cause of the delay that plaintiffs in error had failed to pay the costs, and had not filed their affidavit in *forma pauperis* until three days before the papers were in fact forwarded:

*Held*, that on the call of the case at the heel of the docket of the entire term, under the act of 1877, the writ of error will not be dismissed because of the delay.  The reason thereof, as stated in the clerk's certificate, will be considered, and as it was the failure of plaintiffs in error to pay the costs, which was no legal excuse to the clerk for the delay, it was not caused by the "consent, direction, or procurement of any kind" of plaintiffs in error.

Trust.  Deed.  Charge of Court.  Vendor and purchaser.  Husband and wife.  Compromise and settlement.  Evidence.  New trial.  Practice in the Supreme Court.  Before Judge LAWSON.  Monroe Superior Court.  August Term, 1879.

This case was called at the heel of the docket of the entire term, under the act of 1877.  A motion was made to dismiss the writ of error because of the delay in the transmission of the case from the clerk's office of the superior court, it being claimed that the certificate of the clerk to the bill of exceptions brought it within the proviso to the first section of the act of 1877, that is, showed that the delay resulted from the act of plaintiffs in error.  The facts were as follows:

The bill of exceptions was filed in the clerk's office of the superior court on December 15th, 1879, in abundant time for the papers to have been forwarded before the return day to the next February term of this court.  They were not forwarded until March 17th, 1880, reaching this court, then in session, on the same day.  In his certificate the clerk gave as the cause of the delay, that plaintiffs in error filed their affidavits in *forma pauperis* on March 16th, 1880, and that they failed to pay the costs as required by law.

It was replied to the motion, first, that as the cause of the delay was not germain to the clerk's certificate, it could not be considered as therein stated.  Secondly, that if the facts set forth in said certificate be considered, they furnished no excuse to the clerk for the delay, as it was

his duty to forward the papers within the time prescribed by law whether the costs were paid or not.    Thirdly, that the failure to file affidavits in *forma pauperis* at an earlier date did not make a case where plaintiffs in error, by their own act or that of their counsel, had been the cause of the delay "by consent, direction, or procurement of any kind," so as to bring it within the proviso to the first section of the act of 1877.

The motion was overruled, the court enunciating the principle stated in the last head-note.

The facts, so far as material to the questions decided, are stated in the opinion.

LANIER & ANDERSON; W. D. STONE, for plaintiffs in error.

BERNER & TURNER; STEWART & HALL; Z. D. HARRISON, for defendant.

CRAWFORD, Justice.

B. M. Hathorn sold and conveyed to John B. Maynard 700 acres of land known as the Greer place.    His sons, N. W. Hathorn and N. J. Hathorn, filed their bill in equity against him and John B. Maynard, in which they alleged that he was a trustee for their mother, Narcissa L. Hathorn, and themselves, and that the property sold was theirs in trust ; that the said Maynard, who had bought it, knew that it was their trust property, although the title was in the said B. M. Hathorn.    The prayer of the bill was that the said B. M. Hathorn be removed from his trust, and that the deed be canceled.    The defendant, Maynard, by his answer, denied the material allegations affecting him, and upon the trial, under the evidence and the charge of the court, the jury found in his favor ; whereupon the complainants moved for a new trial on several grounds of error alleged to have been committed by the judge and the jury upon the said trial.    On the hearing of the mo-

tion for a new trial, the same was overruled by the court, and the complainants excepted.

1. Grounds 1, 2, 3, 4, 5, 6, 7, arise upon the testimony under the instructions of the court applicable thereto, and of which the jury considered, and by its finding negatived the facts asserted that they found either contrary to law or to the charge of the court. A doubt might possibly arise under the sixth ground, as to whether they did not find contrary to the charge wherein the judge instructs them, that if Maynard did not have notice of the presence of the trust in the Greer land, and yet had notice of the mingling by Hathorn of his own estate with that of the trust so that he could not identify them, then the burden would be on him to show that the trust funds did not go into the Greer place, and that it devolved upon him to point out and identify the trust property if he would save his own.

We think that the judge put, in this particular charge, the burden too heavily upon Maynard, in requiring him to show anything more than that he had no notice of the trust funds having gone into the Greer place, even though he might have known something of the mixing of the funds. The further duty of pointing out and identifying the trust property was no part of his duty, if he could show that he was an innocent purchaser, and that none other was involved in the litigation. If none of the trust property were in existence, yet if Maynard bought this in good faith and it was free from the trust, his title was perfect, without being called on to point and identify what might or might not be found.

2. The refusal of the court to charge as requested in the eighth ground was not error. Where a deed, by its very terms, conveys in trust only four sevenths of the land to one party and three-sevenths to another—not in trust, but unconditionally—it would be error to instruct the jury that they might find that it all was trust property, notwithstanding the recitals in the deed. The highest evidence of what the intention was would be what it said.

3. The ninth ground of error was the refusal of the court to give in charge the following request without modification : " Even if Hathorn gave Maynard assurances that no trust money had gone into the Greer place, Maynard acted on this assurance at his peril, and if it turned out to be untrue he is not protected. A *cestui que trust* is not bound by statements made by a trustee to enable him to violate his trust." The first part of this charge was modified by adding that " unless, in your judgment, he acted upon such information as became a prudent man in making inquiry after the truth." To the last part he added the words : "If you are satisfied in this case such statements were made with such a purpose."

To determine whether there was error in these modifications, it is necessary to look at the issue and the testimony. Among the first were, whether the trust fund went into the land at all, and if it did, had Maynard notice of that fact? The objection to the qualification is, that it did not require Maynard to go further and inquire as to the matter before acting—that he should have sought information other than that given him by Hathorn.

According to the evidence, Hathorn had managed and controlled this estate himself from 1858 to the time of the trial ; any knowledge, therefore, in possession of another must have come from him. The interest of Hathorn in the object sought by both himself and Maynard, made it necessary for him to speak the truth. At last it was but a mere question of the diligence of one in search of truth, and as Hathorn had no motive tempting him to deceive Maynard, the necessity for further inquiry, the jury doubtless thought, did not exist.

4. The second qualification was a proper one, because the charge *assumed* that the statements made by Hathorn were made to enable him to violate his trust, and therefore to add, " if they were made for such a purpose," then that would make the charge right.

5. The tenth ground was not insisted upon. The eleventh

was the giving in charge the following request: "If
Hathorn and wife took a deed jointly to the Barron place,
he three-sevenths and she four-sevenths, they were tenants.
in common ; and if Hathorn in paying for his interest used
a portion of his wife's profits, derived from the sale of the
place, this, without more, did not destroy their joint in-
terest in the property afterwards purchased with the pro-
ceeds of such a sale, but it made Hathorn the debtor of
his wife to the extent of her money so used, which could
be settled between them at any time."

Taking the case made by the testimony and this charge,.
we gather its meaning to be that if these parties were co-
tenants in the land, and if Hathorn used this money so
received from a sale of the joint property of himself and
his co-tenant, that that act without more would not destroy
their joint interest in property afterwards purchased with
the proceeds of such sale, and if he did thus use that
money he might settle the debt either then or subse-
quently.    The main and important fact being whether he
had or had not so settled the liability.

6. The twelfth ground of error was, because the court
refused the following request :

"If Hathorn had mixed his own and the trust funds,
so that he could not identify what belonged to the trust
estate, he could not convey property to his *cestui que trust*
which she did not agree to take in full settlement with her
and thus discharge his liability to the trust estate.   At all
events, it is incumbent on him, or Maynard claiming under
him, to show clearly and satisfactorily that the property
he conveyed to his *cestui que trust* was fully sufficient to
cover his indebtedness to the trust estate.   The burden
of proof is on the trustee or Maynard to prove this to the
entire satisfaction of the jury."

This charge as asked, in the first part of it, limits any
conveyance which Hathorn might make to a full settle-
ment, before the property which had been mixed could
be separated and conveyed at all, whereas one of the very

·questions made was, whether a part or all of the trust estate had been fully accounted for so as to leave the ·Greer place wholly or partially free from the trust. In the latter part of it, it was objectionable because it required Maynard to prove that the other property, and with which .he had no concern. was sufficient to settle with the *cestui que trust*. To have made it applicable and unobjectionable, ·it needed a qualification to the effect that Maynard must have known at the time that the funds had been mixed.

7. The thirteenth, in substance, sets out that under the ·original deed of trust, Hathorn had the right to use the rents, issues and profits in the support, maintenance and education of his *cestui que trusts*, and although the property may have been mixed with his own, yet if he has fully .accounted and settled with them by conveying to them an amount equal to that of the trust funds originally received, ·together with their share of the profits, then they cannot recover.

This, in effect, is but instructing the jury that if the .complainants had been *fully* paid by the conveyance to them of property equal to ·the value of the original .amount received, that then they could not recover anything more, and this certainly was the law.

14. This was not warranted by the testimony and should ·have been refused.

8. The fifteenth ground was because the court charged the jury in substance: That if Hathorn mingled his own with the trust funds, yet he had the right to settle with his *cestui que trusts* by conveying to them an amount of property .equal in value to the *corpus* of their estate and the profits .thereon, and if they are now in possession of such property, claiming and enjoying the same, it is evidence of ·their acceptance of, and satisfaction at, such settlement.

The only new phase in which this charge puts the law to the jury is, that the possession of property, together ·with a claim of right and enjoyment, is evidence of the acceptance and ratification of the manner in which the

same was acquired. We concur with the judge in the principle that it is evidence for the consideration of the jury, but in view of the other testimony we think that he should have coupled it with the further charge, that at the time of the conveyance and settlement, some change was necessary to indicate the transfer and acceptance besides the mere paper title.

9. The seventeenth: Because the court required the complainants to introduce the original deed of trust after it had been made to appear that the same was in writing, or he would rule out all the evidence about the sale of the Barron place. The question at issue as to that place was, what proportion of it was conveyed in trust? Hathorn insisted and testified that he intended it all to be so conveyed. The deed itself, of course, was the highest and best evidence of intention and act, and was properly ruled in by the court, otherwise the parol testimony should have been ruled out.

10. The eighteenth and last ground is that the verdict is against equity and justice and the charge of the court. We do not consider this ground well taken. This suit was brought by the sons against the father and uncle, and joined in by the wife against the husband and brother, to set up a trust that appears to have been abandoned for many years, and was resurrected to defeat the recovery by Maynard of the Greer place, who not only had paid honest money for it, but by his timely aid saved for his sister and her children, two of whom are the complainants, much of what remains to them. A different verdict would be against equity and justice if Maynard, Hanson and Mrs. White are to be believed, and the jury, it seems, did believe them, for they testify that the money borrowed from them went to pay for the Greer place, as Hathorn himself stated to them, so that it never was any part of the trust estate.

Whilst, therefore, some errors may have been committed in giving the requests to charge, and some in the refusals

to charge as requested, yet the *general charge* submitted the law of the case properly to the jury, and their verdict being abundantly supported by the proof, the judgment is affirmed.

Judgment affirmed.